UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CRAIG S. GREGORY,

        Plaintiff,

v.                              Case No. 3:21-cv-111-BJD-MCR

PRIDE INDUSTRIES, INC., et al.,

        Defendant.
_____/

## ORDER OF DISMISSAL WITHOUT PREJUDICE

Plaintiff, a state inmate of the Florida penal system, initiated this action by filing a pro se Civil Rights Complaint. Doc. 1. Plaintiff is proceeding in forma pauperis on an Amended Complaint. Doc. 8. He names four Defendants: (1) Prison Rehabilitative Industries and Diversified Enterprises, Inc. (PRIDE), a private, nonprofit corporation that operates a work program for prisoners who are in the custody of the Florida Department of Corrections (FDOC)[1]; (2) Greg Snyder,[2] Supervisor of Training and Safety; (3) Morris MaHoney, Shipping and Receiving Supervisor; and (4) Janice Jackson, Project Manager. Id. at 2-3.

---

[1] Gambetta v. Prison Rehab. Indus. & Diversified Enters., Inc., 112 F.3d 1119, 1121 (11th Cir. 1997) (discussing Florida's creation of PRIDE and concluding that PRIDE is an instrumentality of the State of Florida).

[2] When listing the Defendants, Plaintiff misspells Snyder as "Synder." Doc. 8 at 2. However, throughout the Amended Complaint, Plaintiff refers to this Defendant as Snyder. See generally id.

In his Amended Complaint, Plaintiff alleges that in January 2015, while housed at Union Correctional Institution (Union CI), he began working in the shipping and receiving area of the PRIDE Metal Factory where he cut wood and built pallets for shipping products from Union CI. Id. at 7. According to Plaintiff, in late 2015, the fire marshal responded to a fire in the shipping and receiving area and "told[] all the supervisors that [the] shipping and receiving area is now deemed unsafe for using [table] saws to cut wood." Id. at 5-6. Plaintiff also asserts that fire marshals advised Defendants Jackson and Snyder "that the [table] saws were not to be used in this section of the factory until they had a sprinkler system installed." Id. at 6. Plaintiff contends that officials then moved the subject saws next door to the lumber yard, and he and the other inmates were forced to use hand saws. Id.

But due to production delays, Plaintiff asserts that a "supervisor decided sometime on or about May 2016 to bring the [table] saws back." Id. Plaintiff contends that Defendant Snyder then had other inmates install new blades on the table saws, changed the "key mechanism," and added "2 guards." Id. He claims that Snyder also moved the outlet in the shipping and receiving area, so the table saws could be used outside since officials had not installed the required sprinklers. Id. According to Plaintiff, a few days later, Snyder and MaHoney advised the inmates to use the table saws inside. Id. When asked about the fire marshal's directive, Plaintiff alleges that Snyder and MaHoney

2

advised they would alert inmates before any inspection by corporate or the fire marshal and that inmates would be required to clean up any evidence that the table saws had been used inside. Id. Plaintiff states that officials then directed inmates to clean up the saws at least two to three times that year for corporate and fire marshal inspections. Id.

According to Plaintiff, on February 27, 2017, Snyder and MaHoney ordered Plaintiff to make seventy-five pallet units as soon as possible. Id. at 7. Plaintiff alleges that when they made this demand, Plaintiff had never trained on the subject "14[-inch] industrial Grizzley table saw," the table saw only had one guard on it, and he only had one helper who had no experience. Id. Plaintiff asserts he was working on the last pallet when Snyder checked on his progress, "stood right there in front of [Plaintiff] and watch[ed] [him] use this saw with only one guard on it," and told Plaintiff to "tighten up." Id. Plaintiff alleges that he then cut his thumb in half. Id. Plaintiff was taken to an outside hospital where they stitched up the wound over the bone. Id. at 5. He asserts that he now suffers from a bone spur that sticks out from the tip of his thumb that causes a sharp pain throughout his body when he snags or hits it against something. Id.

Plaintiff contends that his injury is not the only accident that has occurred with the table saws. Id. at 7. He claims that Defendants Jackson, Snyder, and MaHoney always knew that the saws were not to be used inside

3

the shipping and receiving area "but instead of fixing the problem, they fix[ed] the saw [] and put it right back where they took it from, knowing they have not installed a sprinkler system." Id. Plaintiff claims that Defendants violated his Eighth and Fourteenth Amendment rights. Id. at 3. As relief, Plaintiff requests "the court to make them fix the problem that the outside hospital cause[d], [the] bone spur that is," and $40,000 in monetary damages for pain and suffering and the loss of his thumb. Id. at 5.

The Prison Litigation Reform Act (PLRA) requires a district court to dismiss a complaint if the court determines the action is frivolous, malicious, or fails to state a claim on which relief may be granted. See 28 U.S.C. § 1915(e)(2)(B). With respect to whether a complaint "fails to state a claim on which relief may be granted," the language of the PLRA mirrors the language of Rule 12(b)(6), Federal Rules of Civil Procedure, so courts apply the same standard in both contexts. Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997); see also Alba v. Montford, 517 F.3d 1249, 1252 (11th Cir. 2008).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Labels and conclusions" or "a formulaic recitation of the elements of a cause of action" that amount to "naked assertions" will not suffice. Id. (quotations, alteration, and citation omitted).

4

Moreover, a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001) (quotations and citations omitted).

In reviewing a pro se plaintiff's pleadings, a court must liberally construe the plaintiff's allegations. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011). However, the duty of a court to construe pro se pleadings liberally does not require the court to serve as an attorney for the plaintiff. Freeman v. Sec'y, Dept. of Corr., 679 F. App'x 982, 982 (11th Cir. 2017) (citing GJR Invs., Inc. v. Cnty. of Escambia, 132 F.3d 1359, 1369 (11th Cir. 1998)).

Plaintiff's Amended Complaint is subject to dismissal under this Court's screening obligation because he fails to "state a claim to relief that is plausible on its face." See Iqbal, 556 U.S. at 678. To state a claim under § 1983, a plaintiff must allege "(1) both that the defendant deprived [him] of a right secured under the Constitution or federal law and (2) that such a deprivation occurred under color of state law." See Bingham, 654 F.3d at 1175 (alteration in original).

Liberally read, Plaintiff claims that Snyder, MaHoney, and Jackson violated his Eighth Amendment right to be free from cruel and unusual punishment when they acted with deliberate indifference by forcing Plaintiff

to use a table saw inside the factory without first installing the required sprinkler system. But deliberate indifference requires "three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Farrow v. West, 320 F.3d 1235, 1245 (11th Cir. 2003) (citations omitted); see Patel v. Lanier Cnty., 969 F.3d 1173, 1188-89 & n.10 (11th Cir. 2020) (recognizing "a tension within [Eleventh Circuit] precedent regarding the minimum standard for culpability under the deliberate-indifference standard," as some cases have used "more than gross negligence" while others have used "more than mere negligence"; finding, however, that it may be "a distinction without a difference" because "no matter how serious the negligence, conduct that can't fairly be characterized as reckless won't meet the Supreme Court's standard" (citations omitted)).

Plaintiff has failed to allege facts suggesting that these Defendants knew of a substantial risk that Plaintiff would cut himself while using the table saw inside without a sprinkler system and disregarded that risk. See Stone v. Hendry, 785 F. App'x 763, 768 (11th Cir. 2019) ("Subjective knowledge cannot be shown by demonstrating that an officer deviated from standard policy, or even that he was grossly unreasonable in his actions."). Instead, Plaintiff's allegations suggest that these Defendants knew that using the table saw inside posed a fire safety risk. And at most, Plaintiff's allegations suggest Jackson, Snyder, and MaHoney may have been negligent, but negligence does not

amount to a constitutional violation. Also, although Plaintiff alleges that the fire marshal and corporate had an alleged policy or rule that these table saws were not allowed to be used inside without a sprinkler system and that these Defendants specifically disregarded that rule, simply violating a protocol or procedure, without more, does not give rise to a deliberate indifference claim. See Taylor v. Adams, 221 F.3d 1254, 1259 (11th Cir. 2000) ("[F]ailure to follow procedures does not, by itself, rise to the level of deliberate indifference because doing so is at most a form of negligence."). As such, Plaintiff has failed to state a claim against Defendants Jackson, Snyder, and MaHoney.

Further, although PRIDE "is an instrumentality of the State of Florida," Gambetta, 112 F.3d at 1121, and can be sued under § 1983, private corporations like PRIDE cannot be held liable under § 1983 based on supervisory liability. Specifically, supervisory officials cannot be held vicariously liable under § 1983 for the unconstitutional acts of their subordinates. Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) abrogated in part on other grounds by Randall v. Scott, 610 F.3d 701 (11th Cir. 2010). Instead, a supervisor can be liable only when that supervisor "personally participates in the alleged unconstitutional conduct or when there is a causal connection" between the supervisor's actions and the constitutional deprivation. Id. Because Plaintiff does not allege that PRIDE personally participated in any unconstitutional conduct, the viability of his supervisory

7

claim depends on whether he plausibly alleges a causal connection between PRIDE's actions and the alleged constitutional deprivation.

Plaintiff may establish the requisite causal connection in one of three ways: (1) "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he [or she] fails to do so"; (2) "when a supervisor's custom or policy . . . result[s] in deliberate indifference to constitutional rights"; or (3) "when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinate would act unlawfully and failed to stop them from doing so." Id. (internal citations and quotation marks omitted).

Plaintiff does not allege facts suggesting a causal connection between any action or inaction attributable to PRIDE and Plaintiff's alleged injury. Nor does he allege that PRIDE knew of a need to train its subordinates and failed to do so. Instead, he seems to suggest that PRIDE or "corporate" has a policy on not using the table saws inside, but the other named Defendants failed to follow that rule. As such, Plaintiff has failed to state a claim against Defendant PRIDE. Thus, the Amended Complaint is due to be dismissed.

In light of the foregoing, it is

**ORDERED AND ADJUDGED:**

1. This case is **DISMISSED without prejudice**.

8

2. The Clerk shall enter judgment dismissing this case without prejudice, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 1st day of October, 2021.

_____
BRIAN J. DAVIS
United States District Judge

Jax-7

C: Craig S. Gregory, #481623

9